**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MICHAEL DELANA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK J. BISIGNANO,**<br>**Commissioner of the Social Security Administration,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. CIV-25-295-GLJ** |

## OPINION AND ORDER

Claimant Michael Delana requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### I. Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

[1] Step one requires Claimant to establish that he is not engaged in substantial gainful activity. Step two requires Claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If Claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where Claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that Claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if Claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-751 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-801.

## II. Claimant's Background

Claimant was fifty-three years old at the time of the most recent administrative hearing. (Tr. 205, 395). He completed twelfth grade and has worked as chief of operations at a dental supply. (Tr. 233, 386). Claimant alleges that he has been unable to work since an amended alleged onset date of March 15, 2020, due to congestive heart failure. (Tr. 232).

## III. Procedural History

On March 16, 2021, Claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that Claimant was not disabled in a written opinion dated October 3, 2022. (Tr. 17-27). The Appeals Council denied review, but this Court reversed and remanded in Case No. CIV-23-95-JAR following a motion for remand by the Commissioner. On remand, ALJ J. Leland Bentley held a second administrative hearing and again determined Claimant was not disabled in a written decision dated May 29, 2024. (Tr. 372-388). The Appeals Council against denied review, so ALJ Bentley's opinion represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981.

## IV. Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. At step two, he found Claimant had the severe impairments of congestive heart failure, obesity, chronic

kidney disease, hypertension, osteoarthritis, and chronic shortness of breath, as well as the nonsevere impairments of gout, pancreatitis status/post stent placement, nicotine dependence, hypercholesterolemia, asthma, chronic fatigue, status/post right carpal fracture, and the medically determinable impairments of obesity and depressive/bipolar/other disorders. (Tr. 375). He then determined Claimant did not meet a Listing at step three, including Listings 4.02, 6.02, 1.18, and 3.14. (Tr. 376-377). At step four, he found that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except he could only occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; and that he must avoid frequent exposure to unprotected heights and dangerous machinery as well as concentrated exposure to dust, fumes, odors, and poorly ventilated areas. The ALJ then concluded that although Claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e.g.*, cashier II, office helper, and inspector/hand packager. (Tr. 387-388).

## V. Review

Claimant contends the ALJ erred in three ways: (1) in assessing Claimant's RFC and crafting hypothetical questions at step five based on these "faulty" findings, and (2) improperly evaluating the medical opinions in the record, resulting in (3) errors in his step 5 findings. The Court agrees with Claimant's contention as it relates to the ALJ's assessment of the medical opinions in the record, and the decision of the Commissioner must therefore be reversed.

The relevant medical records as to the claimant's physical impairments reflect Claimant received treatment from Dr. Stephen Woodson, D.O., during the relevant time period for, *inter alia*, chronic kidney disease, chronic fatigue, essential hypertension, left ventricular failure, alcohol abuse, major depressive disorder, and obesity. (Tr. 308). On March 8, 2021, Dr. Woodson's notes indicate Claimant was generally well nourished and mildly obese, but that his functional ability and safety assessment were unremarkable. (Tr. 307). In the same visit, he noted, "Prognosis poor. I think he should consider disability as he can tolerate no exertion what-so-ever." (Tr. 308). In November 2021, Claimant was positive for, *inter alia*, fatigue and unintentional weight gain of 13 pounds, dizziness, pedal edema, chest pressure, dyspnea with exertion, myalgias and severe leg weakness globally, paresthesia, anxiety, and depression. (Tr. 350-352). Dr. Woodson stated on November 2, 2021, "This young man cannot return to work. His cardiac and orthopedic problems make that impossible. His pain is so severe even sitting for any period of time is impossible so that kind of work can't be done. There is no hope for improvement. The disability will be life-long." (Tr. 353). These conditions largely continued to July 2022, where Claimant's gait was then affected by a limp and slowed. (Tr. 360).

In August 2023, Claimant had pain in both knees and pain when walking, but did not want medication or an x-ray or ortho referral. (Tr. 646). In December 2023, Claimant was positive for tremors, joint pain, and myalgia, and his gait was compensated on both sides, full weight bearing but no assistive device. (Tr. 638). That same month, he was noted to be in heart failure with a mild aortic insufficiency, and his chest pain and shortness of breath were assessed as worsening along with worsening pain in his legs. (Tr. 733-734).

A January 2024 Doppler scan of lower extremities showed mild/moderate atherosclerosis in the lower extremity arteries. He also had mild carotid atherosclerosis of the carotid arteries. (Tr. 753-756). A CT scan of the chest showed no pulmonary embolism, fusiform dilatation of ascending aorta, but no aortic aneurysm despite moderate atherosclerosis. (Tr. 759-760).

On June 19, 2021, Dr. Emily Grewe-Nelson, D.O., conducted a physical consultative examination. Claimant demonstrated 4/5 muscle strength on the left, and 5/5 on the right, and he had a symmetric, steady gait with no assistive device. (Tr. 328). She noted pain in the lumbosacral spine; mild difficulty related to grasping and turning a doorknob, picking up and grasping a pen and writing sentence, and lifting and handling personal belongings; moderate difficulty with squatting and rising; and some difficulty getting up and down from the exam table. Furthermore, Claimant was able to heel walk, but had difficulty with toe walking; his tandem walking was abnormal; and he could stand, but not hop on either foot bilaterally. (Tr. 329). Dr. Grewe-Nelson noted Claimant's significant shortness of breath and cough with activity, which increased "as the exam moved on and got more difficult." (Tr. 329). The range of motion evaluation indicates limited range of motion in extension and flexion of the back, and pain in flexion of the back, as well as weak heel/toe walking. (Tr. 330-333).

On March 25, 2024, Claimant underwent a second consultative examination with Dr. Subramaniam Krishnamurthi, M.D. (Tr. 770-772). Dr. Krishnamurthi noted that Claimant's motor, sensory, and reflexes were within normal limits, including 5/5 strength, except that Claimant had decreased sensation to pinprick to both lower extremities below

the knee bilaterally. He noted Claimant walked with a slightly antalgic gait and very slowly because he was very cautious of falling. Claimant had difficulty heel/toe walking but was able to sit on the exam table without difficulty. (Tr. 771-772).

As to his mental impairments, evidence reflects Dr. Woodson diagnosed Claimant with anxiety and depression as early as March 2021. (Tr. 308, 350, 353). The Caring Hands Healthcare Center in McAlester, Oklahoma, treated Claimant in 2022-2023, with no mental-health-related diagnoses, and specifically noted Claimant was negative for anxiety, depression, and insomnia on December 11, 2023. (Tr. 364-679).

State reviewing physicians determined initially and on reconsideration that Claimant could perform the full range of light work with only a restriction to avoid concentrated exposure from fumes, dusts, gases, and poor ventilation. (Tr. 78-79, 88). Claimant's mental impairments were not considered.

At the most recent administrative hearing, Dr. Barry Pevnar, M.D., testified as a reviewing physician that, *inter alia*, Claimant could perform the full range of medium work, except that he needed to avoid hazards, machinery, or unnecessary heights, and concentrated smoke, as well as only frequent ladders, stairs, and scaffolds. (Tr. 411-412).

In his written opinion, the ALJ summarized Claimant's hearing testimony and the medical evidence in the record. As relevant here, the ALJ outlined the course of Claimant's treatment relationship with Dr. Woodson, and his findings related to Claimant's impairments, including dypnea on exertion, lower extremity edema, fluid retention, slowed gait and with a limp, not cognitively sharp, depressed with a flat and tearful affect, could barely walk and could not sit or stand very long, as well as his opinion that Claimant could

not work. (Tr. 380-381). The ALJ further noted the cardiology consultative examination and pulmonary function study that was within normal limits, as well as Dr. Grewe-Nelson's and Dr. Krishnamurthi's consultative examinations. (Tr. 380-383). The ALJ did not evaluate Dr. Krishnamurthi's opinion as a medical opinion, but he did evaluate most other opinions in the record. He found Dr. Grewe-Nelson's opinion partially persuasive, but inconsistent with later examinations, including Dr. Krishnamurthi's, of normal findings and range of motion, and he noted she did not provide a functional assessment. The ALJ was further persuaded by the state reviewing physician opinions. He was not persuaded by Dr. Woodson's opinion that Claimant could not work, and only partially persuaded by Dr. Woodson's other findings, in that they occurred in relation to Claimant's noncompliance with treatment. Finally, the ALJ found Dr. Pevnar's opinion of medium work with few limitations "reasonably persuasive because it is based in part on extensive cardiac testing that shows no evidence of congestive heart failure or prior heart attack," and there are exam findings of normal respiratory function and normal ejection fraction. (Tr 385-386). The ALJ agreed with Dr. Pevnar that the record did not mention a wheelchair and was therefore consistent with no assistive device being prescribed. (Tr. 386). The ALJ ultimately concluded that Claimant was not disabled. (Tr. 388).

*A. Assessment of Medical Opinions*

Claimant argues that the ALJ failed to properly assess his RFC, including the medical opinions of Dr. Krishnamurthi. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including

controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical

sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ provided an assessment of the opinions of the state reviewing physicians, the echocardiogram findings, Dr. Woodson's opinions, and the consultative opinions of Dr. Grewe-Nelson and Dr. Pevnar, but not Dr. Krishnamurthi. Despite the format and content of Dr. Krishnamurthi's opinion being similar to Dr. Grewe-Nelson's, and neither containing functional assessments, the ALJ assessed only Dr. Grewe-Nelson's. While the ALJ articulated what he found persuasive and/or not persuasive as to each individual opinion, the ALJ failed entirely to explain how the six different opinions he *did* evaluate were evaluated *with respect to each other* or how they translated to the assigned RFC. The Commissioner contends the ALJ was not required to evaluate Dr. Krishnamurthi's opinion because he did not provide a functional assessment of the Claimant, but neither did Dr. Grewe-Nelson. The ALJ did not explain the disparate treatment of these two opinions. Furthermore, the ALJ did not explain the need for the additional postural limitations (and not others) or how the additional limitations he assigned in the RFC fully accounted for Claimant's physical impairments. *See Clifton,* 79 F.3d at1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

The ALJ made no clear explanation for the differences between his RFC assessment and the RFC suggested by the varying opinions he purported to find persuasive. Ultimately, the Court is unclear as to how the ALJ reached the assigned RFC as to Claimant's capabilities, particularly in light of consistent left lower extremity findings,

difficulty heel and/or toe walking, and shortness of breath with minimal exertion. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *5 (D. Kan. Sept. 11, 2013).

While the RFC assessed in this case is more restrictive than that of the state reviewing physicians, for example, the ALJ fails to connect it to the evidence in the record and, as discussed above, fails to acknowledge multiple records indicating additional/differing limitations. The ALJ did not explain how the prescribed additional limitations accounted for his severe and nonsevere impairments, singly and in combination. *See, e.g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [Claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [Claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004) (quoting 20 C.F.R. § 404.1523)); *see also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the

ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

In light of the above errors, the RFC as articulated is incapable of meaningful review. *See Guerra v. Astrue*, 918 F. Supp. 2d 1180, 1188 (D. Kan. 2013). ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review."); *see also Crane v. Kijakazi*, 2021 WL 4270135, at *3 (E.D. Okla. Aug 31, 2021) ("Because the ALJ failed to account for the claimant's documented shoulder impairments . . . the RFC does not wholly account for his impairments."). The Court must be able to follow the logic, and here it cannot. *See Jagodzinski*, 2013 WL 4849101, at *2 ("When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.") (citing *Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)).

*B. Accounting for Pain and Non-Severe Impairments*

Claimant further asserts the ALJ failed to properly account for his pain, as well as his nonsevere carpal fracture, gout, and mental impairments. As to Claimant's mental impairments, there is not a medical opinion in the record that contradicts the ALJ's mental RFC determination. As such, it was not error for the ALJ to form an RFC based on the

medical evidence of record without a medical source opinion. *Troutman v. Kijakazi*, 2022 WL 2960134, at *4-5 (W.D. Okla. July 26, 2022) (finding the ALJ did not "play doctor" when "the ALJ proffered an adequate explanation for rejecting the [medical opinion] and determined Plaintiff's RFC based on the evidence of record[.]").

Claimant contends that the mild limitations at steps two and three somehow require the ALJ to include corollary nonexertional impairments in his RFC. And it is true that an ALJ is required to consider the effect of all impairments, both severe and non-severe, and account for them in formulating the claimant's RFC *at step four*. *See Hill*, 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. However, the Tenth Circuit clarified that "[*Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013)] does not hold that step three and step four findings must be the same." *Bales v. Colvin*, 576 Fed. Appx. 792, 798 n.3 (10th Cir. 2014); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *4 ("The limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). The standard requires the ALJ to explain at step four why even mild limitations are not reflected in an RFC, which he did. And Claimant points to no evidence the ALJ missed or failed to account for. *See* Tr. 26-27. "[T]he ALJ need not accommodate mild mental limitations . . . where the ALJ properly discredits allegations of mental impairments and cites to contrary evidence[.]" *Thomas D. v. Kijakazi*, 605 F. Supp. 3d 1063, 1068 (N.D. Ill. 2022) (internal quotation omitted); *see also Vigil v. Colvin*, 805

F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *Johnson v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4476796, at *4 (E.D. Okla. Aug. 25, 2022), *report and recommendation adopted sub nom. Johnson v. Kijakazi*, 2022 WL 4467675 (E.D. Okla. Sept. 26, 2022) ("Even if an ALJ finds mild limitations from mental impairments, that does not mandate that she include mental limitations in the RFC.").

As to any assertion that the ALJ failed to develop the record on *this issue*, there is no indication that counsel requested further medical examinations, and the need was not clearly established in the record. *Jazvin v. Colvin*, 659 Fed. Appx. 487, 489 (10th Cir. 2016) ("[I]f the Claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'") (quoting *Hawkins*, 113 F.3d at 1168). Nonetheless, on remand, the Court encourages the ALJ to consider ordering a consultative examination to properly account for both Claimant's physical *and* mental impairments. *See* 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The same can be said for the ALJ's assessment of Claimant's non-severe physical impairments of, *inter alia*, carpal tunnel fracture and gout.

As necessary and relevant, however, on remand the ALJ should carefully evaluate Claimant's pain, and the consistency of his statements with the evidence (including any additional evidence provided by a consultative examiner). As part of the symptom analysis, required under Soc. Sec. R. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017), the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures Claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. R. 16-3p, 2017 WL 5180304, at *7-8.

*C. Step Five Hypothetical and Jobs Identified*

Because the Court identifies an error with regard to the medical opinions analysis and RFC assessment, the step five findings, which are based on the RFC, are likewise brought into question. *See Wood v. Comm'r of Soc. Sec.*, 2019 WL 1614591, at *3 (S.D. Ohio April 16, 2019) ("In finding Plaintiff not disabled, the ALJ relied on responses to hypotheticals he posed to the Vocational Expert ("VE") that only limited an individual to "occasional contact." Therefore, the ALJ failed to meet his burden at Step Five because the Court cannot discern whether the additional limitation — to "superficial contact" — would preclude substantial gainful employment in the national economy."). The Court therefore finds that remand is appropriate here.

Accordingly, the decision of the ALJ is hereby reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to Claimant's impairments, as well as a thorough evaluation of Claimant's pain in relation to these impairments. If such analysis on remand results in any adjustment to Claimant's RFC, the ALJ should then redetermine what work, if any, Claimant can perform and ultimately whether he is disabled.

## VI. Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 22nd day of September, 2026.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**